Judge Hitchcock
delivered the opinion of the court:
On the trial of this case, the lessor of the plaintiff claimed title to the premises in controversy as the heir at law of Moses Blackburn, jr., deceased, and that his ancestor derived his title by deed from Moses Blackburn, sen. The defendant claimed title under the will of Moses Blackburn, deceased, as residuary devisee or legatee. The deed of Moses Blackburn, sen., to Moses jr., was not produced in evidence, nor a copy from any public office. But the existence and execution of such deed, and its loss, *were attempted to be proved, for the purpose of laying the foundation for going into secondary evidence of its contents. With this preliminary proof the court were satisfied, and admitted parol evidence to go to the jury to prove the contents of'the deed. In this it is supposed by the counsel of the defendant that the court erred, and this error furnishes the ground for the first reason assigned for a new trial.
We are well aware of the necessity which exists, that there-should be certainty with respect to land titles; and that the state of these titles may be known, and evidence of them preserved, our law requires that deeds and other instruments of writing, conveying, and incumbering lands should bo recorded. The same law prescribes that copies from the records of deeds, mortgages, etc., should be prima facie evidence of the existence of such deeds, so that where a deed has been recorded, the party claiming under it is relieved from the necessity of proving its execution, provided he introduce in evidence a copy. 29 Ohio L. 349. The wisdom of this particular provision of law may be questioned; but still, while it continues a part of our system, it must be enforced; Tho recording of a deed, however, is not necessary to give it validity as between the parties. The title passes, not by the recording, *but by the delivery of a deed. True, if it be not recorded within a limited time, a subsequent grantee without notice, will have the land. This is not, however, because there was anything remaining in the grantor which he could convey, but because the-first grantee has been guilty of a culpable neglect, which, upon. *82 any other principle, would operate an injury upon an innocent individual. The title having passed by the delivery of a deed, is not divested by the destruction or loss of that instrument. It still remains in the grantee. How shall he manifest it? Counsel for the defendant answer, by a copy from the recorder’s office. It may not have been recorded, or if recorded, the record itself may have been lost or destroyed. As a matter of fact we know that public records are not unfrequently consumed- by fire, or otherwise destroyed. When other instruments of writing are lost or destroyed, the law is well established that secondary evidence of their contents shall be received. This is not denied; but it seems to be supposed that there is some peculiar sanctity about conveyances of real estate, which requires a different rule to be established. In the opinion of the court, however, the rule is the same in either case. The court must be first satisfied of the existence, execution, and loss of the instrument. No particular kind <or description of testimony need be introduced to produce this .-effect, but it must be such as produces conviction in the mind of .the triers. The case of Lessee of Allen v. Parish, 3 Ohio, 107, is -.an authority upon this point.
It is urged further by counsel for defendants, that by receiving '•parol evidence, to prove the contents of a deed, the statute of 'frauds is violated, or at least evaded. But in this, it seems to the ■court, counsel are mistaken. Section 4 of this statute, 29 Ohio L. 218, provides that no interest in land shall be assigned or granted, -unless it be by deed, or note in writing, etc. If the proposition ,in this case had been to prove a parol grant of the premises in •controversy, it would have been within the statute. But it was •not so. The proposition was to prove that a grant had been ■made in writing, and in conformity with the law regulating the conveyance of real estate. True, the instrument of writing .evincing this grant was not produced; nor could it be, because it was lost, and from necessity parol evidence was .admitted to prove, not a parol conveyance, but a conveyance in writing.
It has been further objected in argument, that by adhering to .-the principle decided upon the circuit there is danger of opening a wide door to perjury. The force of this objection is felt by *the court; we always regret to be under the necessity of ■receiving parol evidence of any written instrument, and not un,frequently, in such cases, entertain suspicions that the party *83 claiming under such proof, establishes a more favorable case than he would were the instrument itselfproduced. Butitis notwithin our province to disregard a rule of law, because, by possibility, it may be abused. All we can do is to guard as far as possible against such abuses.
The second reason assigned for a new trial is that “the court admitted parol evidence of the declaration and acknowledgments of Moses Blackburn, sen., under whom the plaintiff claims,” etc.
The declarations of Moses Blackburn, sen., which were objected to, but received in evidence, were such generally as were made in connection with the execution of the deed. Declarations were made while going to the magistrate to perfect the acknowledgment, and at the time of the delivery. They were in fact a part of the res gestee, and as such properly received. True, there were some declarations testified to, which were made after the deed was delivered, but they were principally such as were drawn out on the cross-examination of witnesses, and were received by way of explanation, rather than as sustaining any particular fact in the case. There might, by possibility, have been some things which were not strictly proper, and we all know how difficult it is, in the course Of the examination of a witness, to restrain him within strict technical limits. But were we to grant new trials because a witness might have uttered an improper word or sentence, there would be no end to litigation. In every case, it is true, where improper evidence has been admitted, and of that character which might, by possibility, have influenced the jury, a new trial should be granted. But in this case there was nothing of this kind, and it is believed that had the declaration of Moses Blackburn, sen., been entirely excluded, the verdict of the jury could not have been changed.
The third cause assigned fora new trial is, that “ the case presented to the jury, disclosed a body of circumstances, only cognizable by a court of equity, and such as ought not to have been submitted to a jury.”
There can be no doubt, I apprehend, that the facts disclosed ia this case were such as would be cognizable by a court of chancery. But it does not follow that they are alone cognizable in an equitable tribunal. This must depend ujion the rules of evidence. I understand these rules to be the same in chancery as at law, so *far as the facts of this case are concerned. In neither court *84 can the contents of a writing be proved by secondary evidence, until the fact of its loss is established. Nor is any less evidence necessary to establish the fact of loss in the one court than the other. In either, it must bo such as to produce conviction. In this case the lessor of the plaintiff was claiming under a purely legal title. He was pursuing the appropriate legal remedy, and in pursuing this remedy he introduced strictly legal testimony. It is argued by counsel, however, that by accepting this mode of proceeding, the legality of a written instrument is in effect submitted to a jury, whereas to adjudicate upon such a subject is peculiarly within the power of the court. We recognize the doctrine that questions of law arc for the sole consideration of a court, and where an instrument of writing is introduced in evidence, its proper construction is a question of law. If it be such an instrument as is required by the law to be executed with particular formalities, whether it has been so executed, must bo adjudged by the court upon inspection. The same rule applies where the instrument is lost. The jury find the contents, and the court determine from the facts thus found, whether the instrument was in conformity with the law. In the case under consideration, the jury were informed what was necessary to constitute a good and valid deed of conveyance, and by their verdict they found that such an instrument had been executed.
If the instruction complained of in the fourth reason assigned for a new trial-was given, we discover in it nothing erroneous. As has been already observed, no specific evidence is necessary to prove the loss of a written instrument. It must be such as to satisfy the conscience of the tribunal to which it is directed; and it is impossible to conceive, that evidence which would satisfy the mind that a bond conditioned for the payment of money was losti would not, if applicable to a deed for the conveyance of land, satisfy the same mind of its loss.
The last reason assigned for a new trial is, that the verdict was against the law and the evidence. If the court are correct in what has been already said, the verdict was not against law. Was it against the evidence ?
The facts proven were these: At the time of the execution, or pretended execution of the deed for the premises in controversy, Moses Blackburn, sen., being advanced in life, and somewhat, although not greatly in debt, proposed to his sons to convey to *85 *them a part of his property, they assisting to pay his debts, or one particular debt. For the purpose of designating boundaries» the land was surveyed into several parcels, and one of the sons employed to write the deeds of conveyance. They were written and left in the possession of Moses, sen. The deed to Moses, jr., who was one of the sons, covered the lands in controversy. After a considerable lapse of time, the old gentleman went to a magistrate and executed and acknowledged these deeds, but did not immediately deliver them. At length, however, his sons came together at his house, paid him the money stipulated, and he delivered to them their respective deeds. After the delivery, and after considerable conversation between the respective parties, Moses, jr., handed back his deed to his father, to be by him kept as surety that Moses would support him,, from the place, during his (the father’s) life. The deed was handed by the father to one of his daughters for safe keeping, and she held i t until finally it was lost. Not many months after this, Moses, jr., died, and the old gentleman continued to occupy the place until his decease, deriving in a great measure his support therefrom. Two of these deeds were before the jury, and the grantees testified that the deed to Moses, jr., was in the same words, and executed and acknowledged in the same manner, except that it covered a different piece of land. The subscribing witnesses were also examined, and the testimony of one of them was such as to lead the mind to the conclusion that a deed had been executed, as claimed by the lessor of the plaintiff. In addition to this a paper was introduced, sworn to be an exact copy of the deed to Moses, jr., with the exception of the signature, attestation, and acknowledgment. This was the original draft of the deed, but was not executed on account of some interlineations.
With this proof before the jury, there can be no pretense for saying that the verdict was against the evidence.
The motion for a new trial is overruled, and judgment will be entered on the verdict.